IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

VISTO CORPORATION,               )
                                 )
          Plaintiff,             )
                                 )
     vs.                         ) Civil Action No.
                                 ) 2:05-CV-546 (DJF)
MICROSOFT CORPORATION,           )
                                 )
          Defendant.             )
_____  )

COPY

ATTORNEYS' EYES ONLY/CONFIDENTIAL

VIDEOTAPED DEPOSITION OF HONG BUI

Costa Mesa, California

Wednesday, March 28, 2007

Reported by:

Gale M. Lucas, RMR, CRR, CLR

CSR No. 7899

L.A. JOB NO. 637003

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

HONG BUI                    ATTORNEYS' EYES ONLY CONFIDENTIAL

1          IN THE UNITED STATES DISTRICT COURT
2          FOR THE EASTERN DISTRICT OF TEXAS
3                   MARSHALL DIVISION
4
5    VISTO CORPORATION,            )
                                   )
6              Plaintiff,          )
                                   )
7         vs.                      ) Civil Action No.
                                   ) 2:05-CV-546 (DJF)
8    MICROSOFT CORPORATION,        )
                                   )
9              Defendant.          )
     _____)
10
11
12
13
14          ATTORNEYS' EYES ONLY/CONFIDENTIAL VIDEOTAPED
15   DEPOSITION of HONG BUI, taken on behalf of the
16   Defendant, at 695 Town Center Drive, 14th Floor,
17   Costa Mesa, California, beginning at 10:22 a.m.
18   and ending at 4:25 p.m., on Wednesday, March 28,
19   2007, before Gale M. Lucas, RPR, RMR, CRR, CLR,
20   Certified Shorthand Reporter No. 7899.
21
22
23
24
25

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1     APPEARANCES:
 2
 3     For Plaintiff and Deponent:
 4          MANATT, PHELPS & PHILLIPS, LLP
            BY:  SHAWN G. HANSEN, ESQ.
 5          1001 Page Mill Road
            Building 2
 6          Palo Alto, California  94304
            (650) 812-1367
 7          shansen@manatt.com
 8
 9     For Plaintiff:

10          MCKOOL SMITH, APC
            BY:  ERICK ROBINSON, ESQ.
11          300 Crescent Court
            Suite 1500
11          Dallas, Texas  75201
12          (214) 978-4063
            erobinson@mckoolsmith.com
13
14     For Defendant:
15          WEIL, GOTSHAL & MANGES, LLP
            BY:  ZACHARIAH S. HARRINGTON, ESQ.
16          700 Louisiana
            Suite 1600
17          Houston, Texas  77002
            (713) 547-5071
18          zachariah.harrington@weil.com
19
       Also present:
20
            Daniel Reynolds, Videographer
21
22
23
24
25
```

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1              THE WITNESS:  Sure.
 2              THE VIDEOGRAPHER:  We're off the record at
 3      11:20 a.m.
 4              (A recess was held.)
 5              THE VIDEOGRAPHER:  We're back on the
 6      record at 11:44 a.m.
 7              MR. HARRINGTON:  I'm marking as Bui
 8      Exhibit 5 a copy of U.S. Patent No. 6,708,221 B1.
 9      I'm going to refer to this exhibit as the
10      '221 patent.
11              (Defendant's Exhibit 5 was marked
12              for identification and is bound
13              under separate cover.)
14      BY MR. HARRINGTON:
15          Q.  Mr. Bui, do you recognize this document?
16          A.  Yes.
17          Q.  How do you recognize this document?
18          A.  It's a patent owned by Visto.
19          Q.  And do you see your name on this document?
20          A.  Yes.
21          Q.  Are you one of the named inventors of this
22      patent?
23          A.  Yes.
24          Q.  Can you tell me what the invention of the
25      '221 patent was?
```

Timestamps in left margin:
- 11:43:20 (line 5)
- 11:44:16 (line 10)
- 11:44:22 (line 15)
- 11:44:43 (line 20)
- 11:44:55 (line 25)

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    Q.    So you had a substantial input into the

2    development of the company?

3    A.    I would hope so.

4    Q.    Can we go back to Bui Exhibit 5, to the

12:08:58  5    last page, Claim 1.

6    A.    Uh-huh.

7    Q.    I would like to go through Claim 1 and

8    determine what it was, if anything -- if you can

9    determine which particular part of this was

12:09:13  10    inventive.

11    A.    Okay.

12    Q.    Do you recall if prior to filing the '221

13    patent, if anyone was storing first workspace data

14    on a first device?  Were people doing that prior to

12:09:29  15    your invention?

16    MR. HANSEN:  Object to form.

17    THE WITNESS:  Storing the first workspace

18    data on the first devices?  I would assume most

19    computer have that capability.

12:09:39  20    BY MR. HARRINGTON:

21    Q.    Okay.  So that's old; correct?

22    A.    Yeah.

23    Q.    So storing first workspace data on a first

24    device, you don't consider that inventive; correct?

12:09:48  25    A.    No.

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1              Q.   When you say "no," you mean that isn't
 2       inventive; yes?
 3              A.   Storing the first workspace data on the
 4       first devices, no, it's not inventive.
 5              Q.   Thank you.
 6                   Can you go to the next element, "storing
 7       second workspace data on a second device."
 8                   Would you consider that element to be
 9       inventive?
10                   MR. HANSEN:  Object to form.
11                   THE WITNESS:  Same as the first one.
12       BY MR. HARRINGTON:
13              Q.   Not inventive?
14              A.   Yeah.
15              Q.   So you knew of other people or other
16       entities prior to filing the '221 patent that were
17       storing second workspace data on second devices;
18       correct?
19                   MR. HANSEN:  Object to form.
20                   THE WITNESS:  Yeah.  If you use a second
21       computer, you store your data on the second
22       computer.
23       BY MR. HARRINGTON:
24              Q.   Okay.  The third element, determining
25       differences between the first workspace data and
```

Timestamps:
- 12:09:59 (line 5)
- 12:10:08 (line 10)
- 12:10:14 (line 15)
- 12:10:27 (line 20)
- 12:10:36 (line 25)

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1    the second workspace data.
 2            Were you aware of other entities
 3    performing this step prior to your filing the '221
 4    patent?
 5            MR. HANSEN:  Object to form.
 6    BY MR. HARRINGTON:
 7       Q.  Let me clarify.  When I say "prior to your
 8    filing," I mean prior to 1996, because this patent
 9    relies on other applications up to 1996 for
10    priority.
11            So prior to 19 -- when this application
12    claims priority in 1996, were you aware of other
13    people that were determining differences between
14    the first workspace data and the second workspace
15    data?
16            MR. HANSEN:  Object to form.
17            THE WITNESS:  This one right there has
18    become vague because there are various technology
19    out there that can determine the difference of
20    content between two different set of data.
21    BY MR. HARRINGTON:
22       Q.  So this was being done prior to 1996;
23    correct?
24            MR. HANSEN:  Object to form.
25            THE WITNESS:  I would assume so.
```

12:10:49   5
12:11:01  10
12:11:16  15
12:11:34  20
12:11:42  25

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    BY MR. HARRINGTON:

2        Q.   I mean, wouldn't anything that's doing

3    synchronization perform this step?

4        A.   Yeah.

12:11:52   5        Q.   So this step was being done prior to 1996;

6    correct?

7                MR. HANSEN:  Object to form.

8                THE WITNESS:  The idea of doing between

9    the two, synchronize the data, determine the

12:12:04  10    different content between the one workspace to

11    another, yes, some of the product out there.  One

12    that came to mind was Intellisync.

13    BY MR. HARRINGTON:

14        Q.   Okay.  So prior to 1996, this step,

12:12:15  15    determining differences between first workspace

16    data and second workspace data, was being performed

17    at least by Intellisync; correct?

18                MR. HANSEN:  Object to form.

19                THE WITNESS:  It's some idea of the

12:12:27  20    concept around that; but yeah, some of the product

21    out there --

22    BY MR. HARRINGTON:

23        Q.   As you sit here today reading this, you

24    would think that Intellisync was performing the

12:12:36  25    step of determining differences between the first

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1      workspace data and the second workspace data;

2      correct?

3           A.   Yeah.

4           MR. HANSEN:  Object to form.

12:12:44  5      THE WITNESS:  But the workspace is pretty

6      broad, because the workspace -- if -- the way I

7      understand it, that includes your files, your

8      bookmark, your -- whatever the content you have on

9      your system, your personal information management.

12:13:09  10     Intellisync only sync between the

11     personal-information content.  But they don't do

12     your file, they don't do your bookmark, and they

13     don't do anything else except they only synchronize

14     the differences between a calendar, the differences

12:13:24  15     between contacts; right?  So they only solve a very

16     small part of this solution; right?

17     BY MR. HARRINGTON:

18          Q.   So --

19          A.   So if you say the workspace, then

12:13:37  20     Intellisync not doing that; but if you say --

21     determine a difference of data between two

22     address-book content, then they did that at the

23     time.

24          Q.   Okay.  As you read this, would you assume

12:13:49  25     that workspace data would include personal

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
1    information management data?
2         A.   Personal information data is a subset of
3    it.
4         Q.   Okay.  So Intellisync would have practiced
12:14:01  5    determining differences between the first workspace
6    data and the second workspace data?
7         A.   Not workspace, but more like your personal
8    information.
9         Q.   Which is a subset of workspace data;
12:14:14  10   correct?
11        A.   Yes.
12        Q.   So if it's a subset, then it would have to
13   have practiced that; correct?
14        A.   Not have to have practiced that.  At that
12:14:19  15   time, to my knowledge, all they do is just
16   synchronize between the two personal information.
17        Q.   But --
18        A.   But they don't do any file syncing or
19   bookmark or anything else.
12:14:35  20        Q.   Okay.  If first workspace data means -- or
21   includes personal information management data, then
22   Intellisync practiced the third limitation of
23   Claim 1; correct?
24             MR. HANSEN:  Object to form.
12:14:49  25             THE WITNESS:  I don't -- but depend how
```

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1   server -- let me strike that.
 2         Would it surprise you to know that Lotus
 3   Notes was practicing all of the elements of Claim 1
 4   in 1996?
 5         MR. HANSEN:  Object to form.
 6         THE WITNESS:  Before I answer your
 7   questions, I just make my own statement, that I'm
 8   in the business, software business for 20 years, so
 9   nothing anyone do surprise me.
10         So having say that, whatever people do
11   different thing underneath is all in the realm of
12   possibility.
13         MR. HARRINGTON:  I would like to mark as
14   Bui Exhibit 7 a one-page document Bates-labeled
15   VOMS 011711.
16              (Defendant's Exhibit 7 was marked
17              for identification and is bound
18              under separate cover.)
19   BY MR. HARRINGTON:
20         Q.  Do you recognize this document?
21         A.  No.
22         Q.  If you will go down to the portion that's
23   labeled "IMAP."
24         A.  Yes.
25         Q.  And read that sentence to yourself, or
```

12:26:10  5
12:26:27  10
12:27:00  15
12:27:24  20
12:27:34  25

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1          read the two sentences that are in the next IMAP --
 2              A.    "IMAP is still experiencing a
 3          fairly long rollout/development cycle.
 4          I think we'll be seeing plenty of POP3
12:27:52  5          servers for at least the next year."
 6              Q.    If you look at the top of the page or
 7          right underneath the text boxes here, it says -- it
 8          references a date Q1 1997.
 9              A.    Uh-huh.
12:28:08 10             Q.    Before Q1 1997, were you aware of IMAP?
11              A.    Yes.
12              Q.    And how were you aware of IMAP?
13              A.    It's cool.  I believe --
14              Q.    I'm sorry.  It was cool?
12:28:22 15             A.    Uh-huh.  It's kind of one of those
16          emerging technologies that allowed you to -- the
17          ability for you to read e-mails and keep a lot of
18          those e-mails in sync.
19              Q.    Do IMAP synchronize e-mails?
12:28:52 20             A.    It does synchronize the e-mail.
21              Q.    If you were using IMAP with a server on
22          two separate computers to read your e-mail on two
23          separate computers from the e-mail server --
24              A.    Uh-huh.
12:29:19 25             Q.    -- could you tell me if that would be
```

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    covered by Claim 1 of the '221 patent?

2         MR. HANSEN:  Object to form.

3         THE WITNESS:  Well, I cannot interpret the

4    patents, what cover or not cover.  But IMAP is --

12:29:34  5    from the product point of view, is different

6    things.  For example, you can read e-mail from the

7    IMAP, and then you go home and read the e-mail from

8    an IMAP system at home.

9         The IMAP keep track of what content you

12:30:01  10   have read or you haven't read, you know, and

11   synchronize within itself in its own server; right?

12   BY MR. HARRINGTON:

13        Q.  (Nods head.)

14        A.  So it's a very centralized process.  It's

12:30:13  15   not a distributing process.  So therefore, the -- a

16   little bit different solution.

17        Q.  So you're saying the only difference

18   between IMAP -- using IMAP and a server on two

19   computers and Visto system is the Visto system is

12:30:40  20   distributed more?

21        A.  No.  It's -- if you talk about -- you talk

22   about many different things.

23        The IMAP, it's basically what you do is

24   you just use a client here and client here, and one

12:30:57  25   client you read the e-mail and its server, and it's

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    read, it mark that you have read this e-mail.

2          And when you go home, you log into this

3    IMAP server, and it also mark it as you have read

4    this e-mail; right?

12:31:17  5    Q.    Uh-huh.

6    A.    So therefore, it's an aggregate of all

7    your e-mail on the server, but it's -- all your

8    e-mail for Visto, we only keep the differences;

9    right?  So we don't keep everything.  We only keep

12:31:38  10   the differences between the two.  So in term of the

11   product solution, it's different; right?

12         And it's the second part that -- and the

13   IMAPs only do e-mail, and we do everything -- you

14   know, your contact, your bookmarks, your files and

12:31:56  15   all the other different things.  So IMAP itself --

16   you know, it only do -- solve the problem for

17   e-mails.

18   Q.    So would you say that at least for just

19   e-mails, if Claim 1 was just covering e-mails

12:32:21  20   instead of workspace data, would you say that in

21   the Claim 1 of the '221 patent would be covered

22   by -- let me strike that.

23         Would IMAP be covered by Claim 1 of the

24   '221 patent if Claim 1 was only referring to

12:32:39  25   e-mails and not workspace data?

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1          MR. HANSEN:  Object to form.

2          THE WITNESS:  I can't speak legally.  From

3    the product guide point of view, I think totally

4    different way of how you execute and things.

12:32:59  5  BY MR. HARRINGTON:

6          Q.   Can you tell me what in the claim -- do

7    you remember the claim we were just talking about?

8    Can you tell me -- if you want to flip back to

9    Exhibit 5.

12:33:09  10        A.   It's the No. 1 we were referring to,

11   storing the differences at the global server?

12         Q.   Yeah.

13         A.   Right.  And so that what Visto did, right,

14   here for IMAP -- what it does is store everything

12:33:23  15  you have there, right, including the differences.

16   So it's two different implementation and

17   executions.

18         Q.   So IMAP would store the differences?

19         A.   And everything, the aggregate of

12:33:40  20  everything.

21         Q.   So this actual -- the language here

22   doesn't require anything about the aggregate.  It

23   just says "storing differences at the global

24   server."  And so a server would store the

12:33:50  25  differences between those two -- between the two

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    data elements using the IMAP; correct?

2        A.   But I would argue that they -- since they

3    store everything, that also include the

4    differences; right?

12:34:02  5        Q.   Yeah.

6        A.   If that's the case, then if Visto would

7    store everything you ever have on your computer,

8    everything on the global server and everything you

9    have at home in central area, maybe, maybe not,

12:34:16 10    where you can have the debate.  But in this case,

11    IMAP, it just store everything you ever have, so

12    that also include the differences.

13        Q.   Okay.  So --

14        A.   So on the IMAP, also, that you -- your

12:34:31 15    inability to have, you know -- you have to have

16    everything stored on the IMAP local server.

17        Q.   So just reading Claim 1 literally, is

18    there any element of Claim 1 that is not practiced

19    by IMAP?

12:34:47 20            MR. HANSEN:  Object to form.

21            THE WITNESS:  That's not practiced by

22    IMAP?

23    BY MR. HARRINGTON:

24        Q.   Yeah.

12:35:05 25        A.   Sending the differences from the global

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1   server to the second device.

2       Q.    And why would that element not be

3   practiced by IMAP?

4       A.    Because IMAP doesn't send the differences.

12:35:28  5   It send you everything.

6       Q.    But wouldn't the differences be included

7   in that everything when you're sending it?

8           MR. HANSEN:  Object to form.

9           THE WITNESS:  I don't know.  It depend on

12:35:37  10  your semantic, how you would like to use it.

11  BY MR. HARRINGTON:

12      Q.    Is it possible --

13      A.    But to me, they're sending differences,

14  only the differences.

12:35:44  15      Q.    Okay.

16      A.    So if you -- yeah, that's exactly what it

17  says, sending the differences.  It's the

18  differences; right?  Whereas for IMAP, it send

19  everything.

12:36:01  20      Q.    Are you aware of Visto's constant sync

21  technology?

22      A.    Is it something new or --

23      Q.    It's something that Visto markets as

24  their -- as a technology that's incorporated in

12:36:26  25  their current product.

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1    A.   I don't know what it is, because if they

2    call it constant sync -- I have no knowledge of

3    what's called constant sync at the time when I was

4    there; so therefore, that's -- I cannot speak to

12:36:41    5    that.

6    Q.   Okay.  Were you aware of any Visto system

7    that didn't send differences, but, in fact, sent

8    the entire changes from the global server?

9         MR. HANSEN:  Object to form.

12:36:54    10         THE WITNESS:  Can you repeat your question

11    to make sure I --

12    BY MR. HARRINGTON:

13    Q.   Are you aware of any system that -- of

14    Visto's that functioned like IMAP, where the

12:37:02    15    differences weren't sent from the global server,

16    but instead, the entire -- the entire e-mail or the

17    entire PIM data was sent?

18    A.   I'm not aware of that.

19    Q.   Okay.

12:37:14    20    A.   If it did, it must be a bug.

21    Q.   Why would it be a bug?

22    A.   Because it not -- inefficient way of going

23    and doing about it.

24    Q.   So if storing the differences and sending

12:38:10    25    the differences, if that includes sending the

1    entire document or the entire data file -- let me

2    strike that.

3            So with IMAP, you have an e-mail server;

4    correct?

12:38:38  5        A.    Yes.

6        Q.    And that e-mail server can be accessed by

7    two different devices; correct?

8        A.    It can be accessed by many devices.

9        Q.    But at least two devices; correct?

12:38:51  10       A.    At least one.

11       Q.    But it can be -- it can -- the e-mail

12   server can be accessed by two devices; correct?

13       A.    Yes, it can be accessed by two devices.

14       Q.    Okay.  And if you make a change on one of

12:39:07  15   those devices, that change is sent to the e-mail

16   server; correct?

17       A.    Because IMAP -- the way I understand how

18   it works is when you mark the changes, you don't

19   mark the changes on the client's.  You mark the

12:39:30  20   change, and that mark of change notify the server

21   because the central depository of your information.

22           So when you do a change on that client,

23   that change is sent to the server, and the server

24   mark that this content has been changed.

12:39:44  25           So it doesn't do anything on the client,

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1    BY MR. HARRINGTON:
 2        Q.   Is this description of synchronization and
 3    IMAP4 the same or different than your understanding
 4    of synchronization in IMAP that we were discussing
 5    earlier?
 6        A.   The description is pretty much consistent
 7    with what my understanding of it.
 8        Q.   Okay.  In this description, if you look
 9    down to the last paragraph I had you read starting
10    with the list of actions --
11        A.   Uh-huh.
12        Q.   -- it seems to me that that's describing
13    actual -- the synchronization of actual messages;
14    is that correct?
15        A.   It's -- it describe if you delete the
16    message, you expunge message, yes.
17        Q.   So -- and that's just in this instance
18    that they are describing, IMAP4 is synchronizing
19    actual e-mail messages; correct?
20        A.   IMAP is, yes, synchronize the message
21    because they store in centralized server.
22        Q.   Okay.  So when a message is deleted on one
23    device, it's going to get synchronized to the
24    server; correct?
25        A.   If you delete the message, yeah, it would
```

14:08:54   5
14:09:24   10
14:09:38   15
14:09:57   20
14:10:13   25

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1   notify the server that message had been deleted.

2   Right.

3        Q.    So notify that there's been changes?

4        A.    There have been changes.

14:10:24  5        Q.    So would the changes have been sent to the

6   server?

7        A.    It's notified that e-mail have been

8   changes on the server.

9        Q.    So how is that different than sending

14:10:33  10   changes to a server?

11        A.    Because to send, you have to physically

12   change the message and then send it back; but when

13   you notify, then the server already have the

14   message there.  So all he does is mark that message

14:10:46  15   has been deleted.  So no message actually has been

16   sent.

17        Q.    But something -- I mean, I just -- I guess

18   I don't understand the distinction between that and

19   sending differences.

14:11:03  20             Can you explain to me what the distinction

21   is?

22             MR. HANSEN:  Object to form.

23             THE WITNESS:  The difference, from my

24   engineering background, my -- so the difference is:

14:11:15  25   So you have -- A, you have all the content on the

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI                    ATTORNEYS' EYES ONLY CONFIDENTIAL

1    server, and you read those content from the server

2    on a client, and you mark the message, "I read it";

3    right?  You mark the message as it has been read.

4    Okay?

14:11:39   5           And then -- so no message will be sent

6    back to the server.  All it does is send the

7    notification to the server that this message has

8    been read.  That's it.  So -- but no actually of

9    the content of those data are being sent back to

14:11:57   10   the server.

11          And so it's almost like you are an IMAP

12   server.  You just hand me this document; right?

13   What you were saying is when synchronize, saying I

14   read this document, and I sent it back to you

14:12:26   15   (indicating); right?

16   BY MR. HARRINGTON:

17       Q.    Uh-huh.

18       A.    So that is one way that you would keep in

19   sync; right?  But in the real world, how IMAP work,

14:12:42   20   after I read this message, you are the server.  Now

21   I read it.  That's it.  No content actually sent

22   back to you.

23       Q.    So what you're saying is in the '221

24   patent, when it talks about sending the

14:13:06   25   differences, you're interpreting that to mean the

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

1   actual -- actual delta between A and B is sent, not

2   something that is an approximation of the delta; is

3   that right?

4          MR. HANSEN:  Object to form.

14:13:22   5          THE WITNESS:  I -- it's different.

6          So one way to think about the content on

7   the client list is totally different than the

8   content on the server; right?  So therefore, when I

9   say I have this document synced to the server,

14:13:42  10   because I'm the server, it doesn't have this piece

11   of document.  So the content is being sent over;

12   right?  So that's the difference.

13          While for the IMAP cases, I read this

14   document, or I change it, or I delete it, now I

14:13:56  15   just say, "This guy delete this document."

16          And the only message is sending back to

17   the server saying, "This document have been

18   deleted."  And that's it.  The e-mail have been

19   deleted.  The e-mail have been read.  So that's the

14:14:08  20   difference.

21          So no real content actually got being sent

22   back and forth.

23   BY MR. HARRINGTON:

24      Q.   So in Visto's system, when the message is

14:14:19  25   read or deleted, what are the differences that are

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

```
 1   sent -- that were sent to the global server?
 2            MR. HANSEN:  Object to form.
 3   BY MR. HARRINGTON:
 4       Q.  How would Visto's system deal with a read
 5   e-mail in any different way than IMAP4 would deal
 6   with it?
 7            MR. HANSEN:  Object to form.
 8            THE WITNESS:  It's been so long ago, I
 9   don't remember how the e-mail would do it.  But in
10   terms of files, we actually -- if that file is not
11   available on the server, we send the actual files
12   over.
13   BY MR. HARRINGTON:
14       Q.  Okay.  But let's just talk about e-mail
15   because --
16       A.  I don't recall how we actually did the
17   e-mail at the time.
18       Q.  Okay.  Can you think of any way in which
19   you would synchronize e-mail in which you would
20   actually send the differences to the global server?
21            MR. HANSEN:  Object to form.
22            THE WITNESS:  No.
23   BY MR. HARRINGTON:
24       Q.  So in your opinion, Claim 1 of the '221
25   patent can't relate to e-mail; correct?
```

14:14:36 — 5
14:14:45 — 10
14:14:55 — 15
14:15:12 — 20
14:15:26 — 25

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

| | | |
|---|---|---|
| | 1 | (Witness peruses document.) |
| | 2 | BY MR. HARRINGTON: |
| | 3 | Q.    Remember, we were just looking at a |
| | 4 | document, an Internet draft that talked about IMAP4 |
| 14:38:59 | 5 | and described the synchronization process. |
| | 6 | A.    Uh-huh. |
| | 7 | Q.    Can you tell me what limitation of Claim 1 |
| | 8 | is not practiced by the IMAP4? |
| | 9 | MR. HANSEN:   Object to form. |
| 14:39:17 | 10 | THE WITNESS:   I'm not quite sure I really |
| | 11 | understand your question. |
| | 12 | Can you repeat that to me? |
| | 13 | BY MR. HARRINGTON: |
| | 14 | Q.    Earlier in the day, we went through |
| 14:39:32 | 15 | Claim 1 in reference to IMAP, just regular IMAP, |
| | 16 | and I believe you said that IMAP didn't store |
| | 17 | differences at a global server; is that correct? |
| | 18 | A.    Didn't store the differences? |
| | 19 | Q.    Yes. |
| 14:39:47 | 20 | A.    No.   They store everything. |
| | 21 | Q.    Oh, they store the differences. |
| | 22 | So it didn't send the differences; is that |
| | 23 | correct? |
| | 24 | A.    They didn't send the differences.   They |
| 14:39:54 | 25 | just notify of what e-mail have read and what |

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5

HONG BUI

ATTORNEYS' EYES ONLY CONFIDENTIAL

| | |
|---|---|
| 1 | e-mail have deleted, but they didn't send the |
| 2 | actual content back and forth. |
| 3 | Q.  Okay.  And that's true, also, the |
| 4 | difference between Claim 1 and IMAP4 would also be |
| 14:40:11  5 | that the IMAP4 doesn't send the differences from |
| 6 | the global server; correct? |
| 7 | MR. HANSEN:  Object to form. |
| 8 | THE WITNESS:  I don't know.  I can't |
| 9 | interpret the patent, but you just talk about a |
| 14:40:24  10 | small aspect of this patent versus the whole IMAP; |
| 11 | right? |
| 12 | Like I say, this patent does encompass |
| 13 | many different parts; right?  So therefore, the |
| 14 | content synchronizations are different.  But even |
| 14:40:40  15 | that alone, with different -- different between |
| 16 | IMAP, how the first product is being build and how |
| 17 | IMAP actually works. |
| 18 | BY MR. HARRINGTON: |
| 19 | Q.  Okay.  Just as a person who is in this |
| 14:40:52  20 | industry and who understands -- has some |
| 21 | understanding of IMAP -- and you have an |
| 22 | understanding of this patent because you, in fact, |
| 23 | were an inventor on this patent -- I want to get |
| 24 | that understanding of the difference between |
| 14:41:04  25 | Claim 1 and IMAP4. |

Esquire Deposition Services
713.524.4600

3401 Louisiana, Suite 300
Fax 713.524.4951

Houston, TX 77002
1.800.767.9532

4e0fc0ad-b4aa-437c-833b-aa2ecdcddef5